## No. 10,495.

### MRS. A. R. SMITH VS. CITY OF NEW ORLEANS ET AL.

#### ON MOTION TO DISMISS.

1. Suit having been brought against a State tax-collector for the revocation of a tax title he had made to the State, and judgment having been rendered annulling it, he is competent, *quoad hoc*, to prosecute an appeal for the State, and stand in judgment here.

2. Personating the State, as such a suit concedes him to be, the State tax-collector was under no obligation to furnish an appeal bond, and the judge *a quo* properly dispensed him from it.

#### ON THE MERITS.

1. Notwithstanding a sale to the State was made in the enforced collection of State taxes of 1881, yet, being made in January, 1885, it was authorized by the terms of Sections 52 and 59 of Act 96 of 1882, and the property was correctly adjudicated to the State.

2. The property was adjudicated to the State, as the last and highest bidder, at public auction. A forfeiture for the non-payment of taxes is, ordinarily accomplished by the registry of a delinquent list, in the office of the recorder of mortgages or auditor of public accounts, whereby the title of *all* properties thereon listed passes to the sovereign by a statutory condemnation .

3. Section 5 of Act 105 of 1874 is a recognized tax statute of prescription, which limits the time within which the original owner of property alienated for taxes shall be allowed a right of action against a purchaser, to invalidate his title. This prescription is *sui generis*.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.* .

Smith vs. City et al.

*B. R. Forman* for Plaintiff and Appellee:

1. A tax sale or other sale of one lot, with one description, can not be made to cover and extended to another lot with a different description. Bell vs. Taylor, 37 An. 56.

Insufficient or incorrect description in an assessment or advertisement or deed is fatal to a tax sale, whereby a citizen's property is sought to be taken from him without notice. Heughey vs. Barrow, 4 An. 248; Jacques vs. Kupman, 6 An. 542; Wills vs. Auch, 8 An. 19; Wilson vs. Marshall, 10 An. 327; Sutton vs. Calhoun, 14 An. 209; Thibodaux vs. Kellar, 29 An. 508; Marin vs. Orleans, 30 An. 293; Bank vs. Lanes, 30 An. 871; Rapp vs. Lowry, 30 An. 1272; Person vs. O'Neal, 32 An. 228; Stafford vs. Twitchell, 33 An. 520; Carter vs. New Orleans, 33 An. 816.

2. Since the Constitution prohibits the forfeiture of property to the State for non-payment of taxes, that which is prohibited directly can not be accomplished indirectly by the form of a sale to herself. Article 210.

3. If the deed does not recite a compliance with Article 210, it is void.

4. A tax sale without notice or demand, other than by publication, is void. Article 210.

5. Property, in possession of the City of New Orleans, used for public school purposes, is exempt from taxation and its for taxes is void. Article 207.

6. Possession is the first essential for the beginning of all prescription *acquirendi causa.*

7. Each specific piece of property is only affected by the privilege for taxes on it, and for no other taxes; and if the inscription does not identify the property, there is no privilege, and it should be cancelled. All taxes and tax privileges are prescribed in three years. Act 13, 1876, p. 11; Act 96, 1877, p. 132, Sec. 36; Act 77, 1880, p. 95, Sec. 24; Act 96, 1882, p. 130, Sec. 34; Act 98, 1886, p. 145, Sec. 34; Act 85, 1888, p. 124, Sec. 33.

8. The judgment for the drainage assessments, rendered in January, 1875, in 27 An. 20, is prescribed by ten years (C. C. 3547), and the inscription thereof should be cancelled in the absence of proof of revival and re-inscription.

9. This drainage assessment can no longer be collected, and should be erased as an illegal incumbrance on property. Davidson vs. New Orleans, 34 An. 170; Succession Patrick Irwin, 33 An. 64.

---

*Bayne, Denegre & Bayne* on the same side.

---

*W. H. Rogers,* Attorney General; *Wynne Rogers,* Attorney for Tax Collector, and *T. McC. Hyman,* Assistant City Attorney, for Defendants and Appellants:

When a Tax-Collector's deed of sale of property sold for taxes describes the same as situated in a certain square, the number of the square and the streets bounding same being correctly given, and fronting on a certain street correctly named, with certain measurements within a few inches of being correct, and assessed in the name of a person who at that time was the owner of the property, such a description is sufficient, because by it the owner would not be misled and the property sold be identified.

Especially would this be the case where it is shown that the owner possessed no other property in that square

The description is sufficient if it does not mislead or deceive one.

Errors of description can not be taken advantage of when no application has been made to the Board of Review for correction of the same.

Act 80 of 1888 is a remedial and healing statute, intended to cure irregularities in prior tax proceedings by making the tax titles acquired by the State good and perfect, and the assessments under which sales were made legal and valid.

The burden of proof is on the defendant to prove the defects complained of.

The deed of sale is *prima facie* valid in all respects.

All actions to annul tax sales for any irregularities or informalities, of whatever nature, are prescribed by two years from the day the Tax-Collector's deed is recorded.

Under Section 66 of Act 98 of 1886, and Section 65 of Act 85 of 1888, the State is entitled to take possession of the property bought by her at a tax sale.

The provisions of Sections 54 of Act of 1877, p. 146, and 52 of Act of 1882, p. 136, authorize property sold for taxes to be adjudicated to the State.

---

## ON MOTION TO DISMISS.

The opinion of the court was delivered by

WATKINS, J. The grounds assigned for the dismissal of the city's appeal are, (1st) that the matter in dispute is, as to her, less than $2000; (2d) that she is without interest to maintain an alleged sale to the State.

Evidently she is without interest as to the title of the State to the property in suit; and her taxes are less than $2000 in amount. To this extent, the appellee's motion must prevail, and the appeal be dismissed. But the matter is different in respect to the appeal of the State Tax Collector. As to him, the grounds of the motion are, (1st) that he is without interest to prosecute an appeal from the judgment rendered; (2d) that no law authorizes him to appeal in behalf of the State; (3d) that if he can legally thus appeal, he can so do only on furnishing bond; (4th) the order of appeal was void, because it dispensed the Tax Collector from furnishing bond; (5th) that the matter in dispute does not exceed $2000, exclusive of interest.

This is a suit to test the adjudication of a piece of improved real estate, in the city of New Orleans, to the State, and for that purpose the State Tax Collector was made a defendant.

We think it self-evident that, if the law authorized the Tax Collector to stand in judgment, for the purposes stated in the plaintiff's petition, and the judgment rendered in her favor, it also authorized him to prosecute an appeal from that judgment, and stand in judg-

ment on appeal. The theory of plaintiff's case certainly is that, as the Tax Collector passed to the State, he was the proper person with whom to litigate its validity. Whether she was correct in that assumption we need not decide, because she is completely estopped, by her judicial admission of his competency, from now gainsaying it for her own advantage, and to the detriment of the State.

Personating the State, as he is conceded to be, the State Tax Collector was under no obligation to furnish security, and the order of appeal is valid. In the Tax Collector's answer the value of the property is stated to be $4000, and claim is made for over $2000 of revenues. We think this part of the motion is not well grounded, and must be overruled. Merchants Mutual Insurance Company vs. Board, 40 An. 371.

## ON THE MERITS.

The object of this litigation is three-fold, viz.: *First*, to ascertain whether a tax adjudication to the State covers the property claimed by the plaintiff; *second*, if it does embrace it, to annul same for want of constitutionality of the law, under the authority of which it was made, for want of due compliance with essential requirements of the law, in the proceedings antecedent to the sale, and for want of sufficient description of property to constitute a valid alienation; *third*, in the event of either of the foregoing propositions being decided in her favor, her prayer is that, for various reasons assigned, all interfering mortgages and liens recorded against the property be cancelled and erased, and, also, the record of the sale to the State.

The answer of the Tax Collector is that, under three different adjudications, in the enforced collection of State taxes for 1881, 1882 and 1883, the property claimed by the plaintiff was conveyed to the State of Louisiana, and that she was duly advised thereof by reason of the registry in the proper book of conveyances, *prior* to her alleged acquisition of same. That the taxes for which said sales were made were legally assessed, and the sales legally made. That all notices and demands required by law were given to the tax debtor, as required. He avers that the title of the State is good and valid, and that she is entitled to be recognized as the owner thereof, to have the revenues, since the 21st of May, 1885, at $600 per annum, paid to her, and to be placed in possession thereof. He pleads the prescription of three years to plaintiff's demands, and in bar of her

action to annul the title of the State, the prescription of two, three and five years.

From a general judgment in plaintiff's favor the State Tax Collector has appealed.

I.

The first adjudication of the property to the State was made on the 17th of January, 1885, in the enforced collection of State taxes of the year 1881, and the description contained in notarial act of conveyance is as follows, viz.:

" A certain lot of ground in the square bounded by St. Charles, Camp, St. Joseph and Julia [streets], designated as lot No. 28, in square 181; said lot 28 measures 26 feet front on Julia street, by 151 feet in depth."

There is but slight difference between that description and the one contained in the deeds of the plaintiff's authors. The only difference being that, in said deeds, the front measurement on Julia street is given at " 26 feet 3 inches;" and the depth, at 105 feet, *plus* " 45 feet 4 inches"—the total depth being 150 feet 4 inches.

It will be thus perceived, that the tax deed gives the correct front measurement, *minus* three inches, and the correct depth, *plus* eight inches—an insignificant variation. There is no difference, as to the square in which the property is found. None, in reference to the street on which the property fronts. All the deeds describe it as being composed of one lot fronting on Julia street, and another immediately in the rear of same. In one of the deeds of plaintiff's authors, the lot in question is mentioned as being " designated on the particular plan of said *streets* by the number *eleven* of thirteen buildings erected by the New Orleans Building Company; said lot measuring, American measure, 26 feet 3 inches front on Julia street," etc.; and that description is cited by plaintiff's counsel as constituting conclusive evidence of error in the tax title, which denominates the lot conveyed as No. 28.

That, in our opinion, is an error. For, instead of declaring that it bore the number *eleven* on Julia street, it plainly declares that it does bare the number *eleven of thirteen buildings erected by the New Orleans Building Company.*" *Non constat* that 28 was not the correct *municipal* number. But, in order to put the question at rest, the plaintiff's vendor was interrogated as a witness, and deposed that she owned but one single piece of property in the square designated,

and that one, she said, was described in the deeds in evidence. We do not regard it as doubtful, but, on the contrary, clear, that the property adjudicated to the State is identical with that claimed by the plaintiff, and, hence, we must determine the other questions in the case.

## II.

It is contended by plaintiff's counsel that as the property was adjudicated to the State in the enforced collection of 1881 taxes, the assessment thereof, and the sale therefor, must, of necessity, have been made in pursuance of the revenue law of 1880—Act 77 of 1880—and, as that statute did not delegate the power to the Tax Collector *to make an adjudication to the State*, the conveyance was utterly void, and conveyed no title to the State.

As this question lies at the foundation of the title, it must be determined first.

The adjudication to the State was not made until the 17th of January, 1885, long subsequent to the passage of Act 96 of 1882, Section 52 of which provides: "That the bid to be accepted shall be, at least, equal to the taxes and costs, and interest, otherwise the Tax Collector is hereby authorized to bid in said property for the State," etc.

Whether this statute was, or not, intended to apply to tax *sales thereafter* to be made, in the collection of *antecedent* taxes, was not left to decision, or open to inference, for it is specially provided in Section 59 of said act "that tax collectors, and *ex officio* tax collectors, throughout the State, shall be, and are hereby, required to seize, advertise and sell the property on which delinquent taxes are due, on or *before* the first day of May, 1883, and of each succeeding year thereafter; and if any Tax Collector, or *ex officio* Tax Collector, shall fail, neglect or refuse to seize, advertise and sell the *said delinquent property*, as aforesaid, he shall be deemed guilty of nonfeasance in office, and shall, upon conviction, be dismissed therefrom."

Construing these two pertinent provisions together, we think the conclusion irresistible that the Tax Collector should seize, advertise and sell "delinquent property" just in the same way in which he was required to seize, advertise and sell *non*-delinquent property for current taxes. The Legislature had just the same constitutional warrant for authorizing an adjudication to the State in one instance as in the other. As the sale in question was after the enactment

of the law of 1882, we think the act of the State Tax Collector, in making the adjudication to the State, was authorized and valid.

### III.

The next question for consideration is whether the statute just adverted to, and those of like import, come within the terms of the prohibition contained in Article 210 of the Constitution, and which is couched in these terms, viz.:

" There shall be no *forfeiture* of property for the non-payment of taxes; * * but, at the expiration of the year in which they are due, the collector shall, without suit, * * advertise for sale the property on which the taxes are due," etc.

We must determine what was the evil the framers of the organic law had in mind when the quoted provision was drafted, and to which the remedy was to be applied.

This can be best understood by an inspection of the revenue laws in force antecedent to the adoption of that instrument.

The revenue law of 1869 required Tax Collectors to make out their delinquent lists of unpaid taxes on the 1st of December, and send same to the parish Recorders, whose duty it was to forward same forthwith to the Auditor of Public Accounts. It declares " that the list and verification, when filed in the office of the Auditor of Public Accounts, shall be entered by him on a record kept for that purpose, and shall, from *the day of filing*, *vest a title* to the lands and lots therein returned_ *to the State of Louisiana*, which shall be impeacha- ble only on proof that taxes for non-payment, whereof the lands were returned forfeited, had been in fact paid to the Collector before the return of the list to the Recorder." Secs. 74 and 76, Act 114 of 1869.

By the revenue law of 1870, the effect of such filing is declared to be a mortgage only. Secs. 65 and 67 of Act 68, of Extra Session of 1870. But this provision was repealed, and those of 1869 reënacted in 1871.. *Vide* Sections 66 and 68 of Act 42, 1871. This law remained in force until 1877, when it was so amended as to vest title in the State "*from the day of filing in the Recorder's office.*" [Italics ours.] Sec. 61 of Act 69 of Extra Session of 1877.

Under the effect and operation of this system of forfeiture great abuses were inflicted upon the taxpayers. By the simple recorda- tion of a parochial delinquent list, made up by a Tax Collector and filed in the Auditor's office, at the Capitol of the State, *all the delin-*

*quent property of an entire parish passed to the State by an indefeasible title.* It was, doubtless, the purpose of this constitutional prohibition to put an end to this evil, and to require that, in the future, no property should be *thus forfeited* to the State for delinquent taxes; but that, in all cases, delinquent property should be seized, advertised, and sold at public auction to the last and highest bidder. And it seems to be the purpose of the statute quoted, that if, at such public auction, there shall be no bid for the property of an amount equal to the amount of taxes, cost and interest, the Tax Collector is authorized "to *bid* in said property to the State." In such case the State, as the last and highest bidder, becomes an adjudicatee at public auction. Title does not pass to her *by the process of forfeiture,* which is clearly distinguishable from a public judicial sale. To point the argument, it is only necessary to instance a like provision that is contained in the law of 1877, which recognizes the right of the State to become a *purchaser* at public auction, whereby she acquires a title contradistinguished from that by the process of forfeiture, as indicated in Section 61 of that act. *Vide,* Sec. 57, Act 96 of Extra Session of 1877. Hence the statute in question is constitutional.

## IV.

The plea of prescription of three years, urged by the defendant, as a bar to the plaintiff's "*action to invalidate the title*" of the State, to property purchased by her at public auction, is predicated on Section 5 of Article 105 of 1874, which is as follows, viz. :

"Any action to invalidate the titles to any property purchased at tax sale, under or by virtue of any law of this State, shall be prescribed by the lapse of three years from the date of such sale."

This statute defines and fixes a period of prescription against the *action* to invalidate a tax title for cause of nullity; and it must be computed "from the *date of sale,*" by the specific terms of the act.

We first gave effect to this statute in Barrow vs. Wilson, 39 An. 403, and, in the course of our opinion said, after quoting it, in juxtaposition with Article 3543, R. C. C.:

"We have thus placed the two provisions side by side, in order to exhibit the broader and more sweeping effect of the [former] law. While the article of the code covers *informalities* only, the act of 1874 creates a positive bar against ' any action to invalidate ' a tax title."

And proceeding with the discussion we further said:

" It now becomes our duty to ascertain the effect of such a statute upon the rights of the parties under such sales. This is distinctly a statute of prescription. It operates not upon the rights of the parties. It does not purport to validate a title which, otherwise, would be invalid. It simply limits· the time within which the owner of the original title shall be allowed to assert his rights against the pur- chaser at a tax sale" (pp. 406, 407).

Again we said:

"The statute does not concern itself with the strength of one title or the weakness of the other. The plaintiff had a right which could only be enforced by an action. The lawmaker had the power to fix a reasonable limit within which such action should be brought, under the penalty of its being thereafter barred by prescription. That power has been exercised, and when the time has expired, the courts are bound to enforce the limitation and deny the action" (p. 409). ˙Vide, also, McDougal vs. Monlezun, 39 An. 1005.

There is nothing we can add to this· terse and vigorous interper- tation of this statute, which would give it additional force. It is essentially· a tax statute and its purpose is obvious. The plaintiff acquired title in August, 1885, and his vendor acquired from the tax delinquent on the 22d of May, 1885, *subsequent* to the registry of the Tax Collector's deed to the State. Both of these acts are by private signature, and unaccompanied by certificates of mortgages, and con- sequently the title passed *cum onere*.

The plaintiff's title is not an adversary one to that of the tax de- linquent. *She is the common author of the plaintiff and her vendor.* The Tax Collector's deed to the State was executed on the 17th of January, 1885, and this suit was filed on the 18th of March, 1889— more than three years after the *date* of the sale which this action seeks to annul. Our conclusion is that the prescriptible term has expired, and we are bound to enforce the limitation, and deny the plaintiff's action.· The judgment appealed from must, therefore, be reversed.

It is ordered and decreed that the judgment of the District Court be annulled and reversed; that the demands of plaintiff and appellee be rejected, at his cost, in both courts; that those of the defendant in re-convention be sustained, and the *State of Louisiana* be recognized as the owner of the property in controversy, and *placed* in posses- sion thereof, and that she be entitled to rents and revenues. But it

is further and finally ordered, that the claim of the State for a fixed and definite allowance on that score be dismissed as of non-suit, with a full reservation of the rights of all parties.